## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| **BARNETT CHRYSLER PLYMOUTH CO., d/b/a BARNETT KIA,** a Minnesota corporation, | ) ) ) ) | **Case No. 08-cv-828 (ADM/JSM)** |
| Plaintiff, | ) ) | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY** |
| v. | ) ) | |
| **KIA MOTORS AMERICA, INC.,** a California corporation, | ) ) ) | |
| Defendant. | ) | |

## MOTION

Pursuant to Federal Rule of Civil Procedure 37(a), Plaintiff Barnett Chrysler Plymouth Co., d/b/a Barnett Kia (hereinafter "Barnett" or "Plaintiff"), respectfully moves this Court for an Order compelling Defendant Kia Motors America, Inc. ("KMA" or "Defendant") to supplement its Responses to Barnett's Interrogatories, Requests for Production of Documents, Requests for Admission, and Notice of Taking Videotaped Deposition of Rule 30(b)(6) Designees, on the basis that KMA's responses are incomplete and fail to meet the standard for discovery as outlined in the Federal Rules of Civil Procedure.

## BACKGROUND FACTS

The parties are involved in a discovery dispute regarding the Discovery Requests and Objections outlined below.

The primary issue disputed by the parties for the purpose of this motion is whether

KMA must provide information regarding "Local Kia Dealers" other than Barnett and Luther Kia ("Luther"). The underlying dispute centers around Barnett's allegation that KMA violated Section 2(d) of the Robinson-Patman Act by offering discretionary advertising funds to certain dealers who compete with Barnett without making such funds available to Barnett on a proportionally-equal basis.

In December 2006, Barnett discovered that, unbeknownst to it, KMA had engaged in a continuous pattern of discriminatory conduct whereby KMA offered certain favored KMA dealers, including certain direct competitors of Barnett, the opportunity to receive significant sums from KMA each month in the form of discretionary advertising funds available through the "RMF Program."

Barnett discovered KMA's conduct when a packet of letters from KMA to other Central Region Kia dealers was accidentally sent to Barnett. One of these letters was addressed to Luther, a Kia dealership that also serves the Twin Cities Metropolitan Area. Another letter was addressed to Duluth Kia, serving Duluth, Minnesota.[1] Barnett had no idea that KMA made discretionary advertising funds available to its Kia dealers, including Kia dealers competing with Barnett, on a regular basis prior to receiving these letters. Based upon these letters, Barnett filed the Complaint that is the subject of the underlying litigation, pointing to these letters to support its allegation that KMA violated the Robinson-Patman Act.

---

[1] The other letters were addressed to Kia dealerships located in areas that arguably do not directly compete with Barnett. Barnett's claims in regard to Duluth Kia were subsequently dismissed on the ground that Barnett did not sufficiently allege that it directly competes with Duluth Kia.

These discretionary advertising funds permitted Barnett's competitors to purchase significantly more media and print advertising than Barnett could afford, in the same markets Barnett advertised in, giving those competitors a distinct competitive advantage over Barnett.   Had Barnett been afforded the same opportunity that KMA provided Barnett's competitors, Barnett would have increased its advertising and its sales volume would have increased as a result.

As a result of KMA's discriminatory treatment, Barnett estimates that, from January 1, 2004 through December 31, 2007, it suffered more than $3.3 million in lost new car sales and other revenue opportunities that flow directly from an increased volume of new car sales.  In addition, the value of the Barnett dealership as a multiple of earnings has been affected.

Through these Discovery Requests, Barnett requested information related to the aforementioned claims.   Specifically, Barnett seeks discovery regarding KMA's provision of discretionary advertising funds to those Kia dealers located in the Twin Cities Metropolitan Area competing with Barnett for customers in the Twin Cities Metropolitan Area ("Local Kia Dealers").  As discussed in detail below, discovery in regard to these Local Kia Dealers is relevant to this action and clearly falls within the broad scope of discovery permitted by Fed. R. Civ. P. 26(b)(1).  Despite numerous attempts to resolve this discovery dispute, KMA refuses to provide responses to any Discovery Requests seeking information regarding any Local Kia Dealers other than Barnett or Luther.  KMA also refuses to produce information regarding its RMF Program for the entire Relevant Period, which Barnett has defined as November 1998, when

Barnett Kia entered into its Dealer Agreement with KMA to the present.  Additionally, despite having nearly eight months to do so, KMA has not produced requested documents, indicating that it is still in the process of producing these documents.

Pursuant to Local Rule 37.2, a recital of Barnett's Discovery Requests and KMA's Objections which are in dispute follows: [2]

## INTERROGATORIES[3]

INTERROGATORY NO. 1:   Identify any communications and/or documents reflecting communications between You and Barnett Kia or any other Kia dealers in KMA's Central Region regarding the opportunity to participate in the RMF Program, including, but not limited to, the availability of the RMF Program, the qualifications for participation in the RMF Program, and the terms and conditions under which RMF Program funds would be made available to each participating Kia dealer.

RESPONSE:   KMA objects to this interrogatory to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther Kia.

KMA directs Plaintiff to KMA's response to Request Nos. 3 and 15 of Plaintiff's First Set of Requests for Production of Documents . . . .

---

[2] Due to the parties' multiple attempts to resolve these disputes without intervention from this Court, the Requests, Responses and Objections have changed a number of times. This recital contains the most recent version of each request and response, and only includes Responses and Objections addressed in this motion.

[3] *See* Plaintiff's First Set of Interrogatories attached to Affidavit of Barbara A. Bagdon in Support of Motion to Compel dated December 4, 2009("Bagdon Aff."), ¶ 3.  *See also,* Plaintiff's First Set of Supplemental Interrogatories attached to Bagdon Aff., ¶ 4; Plaintiff's Second Set of Supplemental Interrogatories, attached to Bagdon Aff., ¶ 5; Defendant KMA's Responses and Objections to Plaintiff's First Set of Interrogatories, attached to Bagdon Aff., ¶ 6; Defendant KMA's Responses and Objections to Plaintiff's First Set of Supplemental Interrogatories, Bagdon Aff., ¶ 7; Defendant KMA's Responses and Objections to Plaintiff's Second Set of Supplemental Interrogatories, Bagdon Aff., ¶ 8; Plaintiff's Reply to Defendant KMA's Objections to First Set of Interrogatories, Requests for Documents, Requests for Admission and 30(b)(6) Deposition Notice, Bagdon Aff., ¶ 9.

<u>INTERROGATORY NO. 2</u>: Identify all Local Kia Dealers that were offered incentive payments through the RMF Program.

> <u>RESPONSE:</u>  KMA objects to this interrogatory to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther Kia.

> KMA responds that Barnett and Luther were offered and received incentive payments through the RMF Program.

<u>INTERROGATORY NO. 3</u>:  For each offer to a Local Kia Dealer identified in response to Interrogatory No. 2 above, state the date(s) on which each such dealer was offered RMF Program payments; the manner in which the offer(s) was communicated to the dealer, *i.e.,* by letter, fax, verbally, etc.; the maximum dollar amount made available to the dealer as an incentive payment; the time period for each such incentive payment offer, *i.e.,* the month, the quarter, etc.; the conditions that the dealer must fulfill to receive the incentive payment; the co-op percentage reimbursement offered, *i.e.,* 50% or 100% reimbursement; the amount of each such incentive payment KMA ultimately paid each such dealer; and, the date(s) on which incentive payments were made to each such dealer.

> <u>RESPONSE:</u>  KMA directs Plaintiff to KMA's response to Request Nos. 1-4, 14, and 15 of Plaintiff's First Set of Requests for Production of Documents . . . .

<u>INTERROGATORY NO. 5</u>:  Identify the names and locations of all Kia Dealers in the Central Region to whom KMA did not provide notice of the existence of the RMF Program at any time prior to or during the time period commencing September 20, 2003 and ending March 21, 2008.

> <u>RESPONSE:</u>  KMA objects to this interrogatory to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther Kia. Subject to the foregoing general and specific objections, and specifically reserving the same, KMA responds:  None.

<u>INTERROGATORY NO. 9</u>:  Identify and describe each and every request by a dealer identified in response to Interrogatory No. 2 above for RMF Program funds and/or any reports provided to KMA by any such dealer to support that dealer's request for an award of RMF Program funds during the Relevant Period.

> <u>RESPONSE:</u>  KMA objects to this interrogatory to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther Kia. KMA incorporates its objection to the Relevant Period as if fully set forth in this response.

KMA directs Plaintiff to KMA's response to Request No. 15 of Plaintiff's First Set of Requests for Production of Documents . . . .

INTERROGATORY NO. 10:    Describe how RMF Program funds were utilized by each Local Kia Dealer identified in response to Interrogatory No. 2 during the Relevant Period.  Identify the type advertising purchased, the media in which such advertising was disseminated to the public, and the coverage area for each ad placed.  Describe any communications between KMA and Local Kia Dealers in regard to how and when these funds were spent on RMF-supported advertising.

RESPONSE:  KMA objects to this interrogatory to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther Kia. KMA incorporates its objection to the Relevant Period as if fully set forth in this response.

KMA directs Plaintiff to KMA's response to Request Nos. 9 and 15 of Plaintiff's First Set of Requests for Production of Documents . . . .

INTERROGATORY NO. 11:  State whether each Local Kia Dealer failed to meet, met, or exceeded the sales performance objective set for it by KMA in each month commencing September 20, 2003 and ending March 21, 2008.   Identify the percentage by which each Local Kia Dealer's sales exceeded or fell short of the sales target set by KMA in each month during this time period.

RESPONSE:  KMA objects to this interrogatory to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther Kia.

KMA direct Plaintiff to KMA's response to Request Nos. 6 and 7 of Plaintiff's First Set of Requests for Production of Documents . . . .

INTERROGATORY NO. 12:  For each Local Kia Dealer, state the dollar volume bonuses, or any other form of consideration, received in each month commencing September 20, 2003 and ending March 21, 2008, as a result of meeting or exceeding the sales targets set by KMA.  Provide this information in both the aggregate and by unit, *i.e.*, for each dealer, state the total amount of dollar volume bonuses received each month, and the bonus amount per new car sold in that month.

RESPONSE:  KMA objects to this interrogatory to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther Kia.

<u>INTERROGATORY NO. 13:</u>   Do You contend that KMA provided RMF Program funds on a proportionally equal basis to all Kia dealers competing with Barnett Kia?  If "yes," explain the method You employed for calculating or otherwise determining the proportionality of these distributions, and identify and describe any documents reflecting the proportionality determination.

> <u>RESPONSE:</u>   KMA objects to this interrogatory to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther Kia.

> Yes, RMF Program funds were available on a proportionally equal basis to Barnett Kia and Luther Kia.  Plaintiff, however, did not seek or request RMF Program funds to the same extent that Luther Kia did.

> KMA further directs Plaintiff to KMA's response to Interrogatory No. 7.

<u>INTERROGATORY NO. 14:</u>  If You answered Interrogatory No. 13 with "yes," identify and describe all facts, communications and documents that support Your claims that payments made available through the RMF Program, or any other advertising program described in Your responses to these Interrogatories, were made available to all Local Kia Dealers, and specifically Barnett Kia, on proportionally equal terms.

> <u>RESPONSE:</u>   KMA objects to this interrogatory to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther Kia.

> *See* KMA's responses to Interrogatories Nos. 2 and 7.

<u>INTERROGATORY NO. 15:</u>  Do You contend that any RMF Program payments made to any Local Kia Dealer identified in response to Interrogatory No. 2 were made in order to enable that dealer to meet prices offered by that dealer's competition?  If "yes," describe all facts and identify all documents that You relied upon in making the determination that it was necessary to provide the RMF Program payments to such dealers in order to assist those dealers to meet a competitor's price.  Identify which dealers You determined were 'competing" with Kia Dealers that received RMF Program funds and describe with specificity the lower prices offered by these "competitors."

> <u>RESPONSE:</u>  KMA objects to this interrogatory to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther Kia.

> KMA responds that KMA made RMF Funds available as part of its ongoing efforts to respond to vibrant interbrand competition.

INTERROGATORY NO. 17:   Describe the purposes for which funds in the RMF account[4] were used at any time prior to or during the Relevant Period other than in connection with the "RMF Program."   Identify each such use, providing the name of each Kia dealer receiving the RMF funds, the date(s) the funds were provided to each such Kia dealer, and the reason RMF funds were provided to each such Kia dealer on each such occasion.

> RESPONSE:   KMA objects to this interrogatory to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther Kia.

> KMA . . . objects to the extent this interrogatory calls for information from before the already overbroad Relevant Period.

INTERROGATORY NO. 21:  For each Local Kia Dealer that received advertising incentive payments through the RMF Program at any time during the Relevant Period, including but not limited to Luther Kia, identify, by zip code, the number of new Kia vehicle sales made each month during the Relevant Period.

> RESPONSE:  KMA objects to this interrogatory to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther Kia.

> KMA direct Plaintiff to KMA's response to Request No. 7 of Plaintiff's First Set of Requests for Production of Documents . . . .

INTERROGATORY NO. 22:  For each Local Kia Dealer, identify, by Dealer, the zip code of all purchasers of new Kia vehicles sold during the Relevant Period.

> RESPONSE:   KMA objects to this interrogatory to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther Kia.

> [KMA also refuses to provide information prior to September 2003 on relevance grounds.]

> KMA still further objects to this interrogatory on the grounds that it is duplicative of Request No. 21 of Plaintiff's Second Set of Supplemental Interrogatories . . . and of Request No. 23 of Plaintiff's Second Supplemental Set of Requests for Production of Documents.

---

[4] Barnett clarified the term "RMF account" to mean the Regional Marketing Fund for Kia's Central Region.  *See* Letter from Barnett's counsel to KMA's counsel, dated July 16, 2009; attached to Bagdon Aff., ¶ 12.

## REQUESTS FOR ADMISSION[5]

REQUEST NO. 5:   Admit that, during the Relevant Period, KMA notified selected Kia Dealers in the Central Region, including, at a minimum, Kia of Cedar Rapids, Luther, Duluth Kia, Muscatell Kia, Billion Kia, and Prestige Kia, of the RMF Program and gave these dealers the opportunity to receive Payments from KMA through participation in the RMF Program.

> RESPONSE:   KMA objects to this Request to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther.

REQUEST NO. 6:   Admit that each of the Kia dealers identified in Request No. 5 did, in fact, receive such discretionary Payments from KMA through participation in the RMF Program during the Relevant Period.

> RESPONSE:   KMA objects to this Request to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther.

REQUEST NO. 7:   Admit that some additional Local Kia Dealers not identified in Request No. 5 above were offered the opportunity to participate in the RMF Program during the Relevant Period.

> RESPONSE:   KMA objects to this Request to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther.

REQUEST NO. 8:   Admit that some additional Local Kia Dealers not identified in Request No. 5 above did, in fact, receive regular discretionary Payments from KMA through participation in the RMF Program.

> RESPONSE:   KMA objects to this Request to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther.

REQUEST NO. 11:   Admit that Kia dealers that received funds through the RMF Program had more funds available to spend on media and/or print advertising than they would have had absent the receipt of RMF Program funds. [6]

---

[5] *See* Plaintiff's First Set of Requests for Admission attached to Bagdon Aff. at ¶ 10.  *See* Defendant KMA's Responses and Objections to Plaintiff's First Set of Requests for Admission, attached to Bagdon Aff. at ¶ 11.

[6] *See* Letter from Barnett's counsel to KMA's counsel, dated July 16, 2009, attached to Bagdon Aff., ¶ 12; and Letter from Barnett's counsel to KMA's counsel, dated September 22, 2009, attached to Bagdon Aff., ¶ 13.

RESPONSE:  KMA objects to this Request on the grounds that it is vague and ambiguous.

[KMA states that it neither admits nor denies this Request on the basis that the Request calls for speculation.]

REQUEST NO. 20:  Admit that Kia dealers that receive manufacturer rebates are able to offer their automobiles to the public at a more competitive price.

RESPONSE:  KMA objects to this Request to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther.

KMA further objects on the ground that the terms "manufacturer rebates" and "more competitive price" is [sic] vague and ambiguous.[7]

[KMA neither admits nor denies the Request on the basis that the Request calls for speculation.]

REQUEST NO. 22:  Admit that Barnett competes with Minneapolis/St. Paul Metropolitan Area Kia dealers for potential purchasers of Kia vehicles.

RESPONSE:  KMA objects to this Request to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther.

REQUEST NO. 27:  Admit that KMA placed Barnett at a competitive disadvantage, *vis-à-vis* other Local Kia dealers, by not giving Barnett the opportunity to receive advertising funds through the RMF Program.

RESPONSE:  KMA objects to this Request to the extent it calls for information regarding Kia dealers other than Plaintiff and Luther.

### Requests for Documents[8]

---

[7] In  the letter from Barnett's counsel to KMA's counsel, dated July 16, 2009, attached to Bagdon Aff., ¶ 12, Barnett defined the term "manufacturer" to mean "KMA," and "rebate" to mean "a return of a part of the original payment for a KIA unit purchased from KMA."  "More competitive price" was defined to mean a price lower than would have been offered absent the manufacturer rebate.  KMA stood on its original objections, despite these clarifications.

REQUEST NO. 3:  Produce all documents in Your possession, custody or control related to communications between KMA and any Local Kia Dealer, regarding the availability of discretionary advertising funds through the RMF Program or any other promotional program offered to Kia dealers by KMA, whether made prior to or during the Relevant Period.

RESPONSE:  KMA objects to this Request the extent that it calls for the production of information regarding dealers other than Plaintiff and Luther.

REQUEST NO. 5:  Produce all internal or external documents in Your possession, custody or control related to or identifying all communications between or among KMA representatives regarding the determination of how RMF Program funds or funds available through other promotional programs would be distributed to Kia dealers, including determinations regarding which Kia dealers would receive funds and which would not, and the amount of funds that each dealer would receive.

RESPONSE:  KMA objects to the Request to the extent that it calls for documents regarding communications between or among KMA representatives regarding the determination of how RMF Programs would be distributed to Kia dealers other than Barnett and Luther.

REQUEST NO. 6:  Produce all documents in Your possession, custody or control identifying the monthly sales targets for Local Kia Dealers for the period from January 1, 2000 through the present. [9]

RESPONSE:  KMA objects to this Request the extent that it calls for the production of information regarding Kia dealers other than Plaintiff and Luther.

[KMA also refuses to produce any documents prior to September 2003 on relevance grounds.[10]]

---

[8] *See* Plaintiff's First Set of Requests for Production of Documents, attached to Bagdon Aff. at ¶ 14.  *See* Defendant KMA's Responses and Objections to Plaintiff's First Set of Requests for Production of Documents, attached to Bagdon Aff. at ¶ 15.

[9] As amended in the letter from Barnett's counsel to KMA's Counsel dated September 22, 2009, attached to Bagdon Aff. at ¶ 13.

[10] *See* Letter from KMA's counsel to Barnett's counsel, dated August 17, 2009, attached to Bagdon Aff. at ¶ 16.  *See also* Letter from KMA's counsel to Barnett's counsel, dated November 10, 2009, attached to Bagdon Aff. at ¶ 17.

REQUEST NO. 7: Produce all documents in Your possession, custody or control related to the monthly new unit sales achieved by Local Kia Dealers that received discretionary coop advertising funds through the RMF Program or other promotional programs during the period from January 1, 2000 through the present, including documents sufficient to determine the number of new unit sales achieved by Local Kia Dealers during this period. [11]

> RESPONSE:  KMA objects to the Request to the extent that it calls for the production of information regarding Kia dealers other than Plaintiff and Luther.

> [KMA also refuses to produce any documents prior to September 2003 on relevance grounds.[12]]

REQUEST NO. 8: Produce all documents in Your possession, custody or control related to the receipt of RMF Program funds or any other promotional allowances by Local Kia Dealers. [13]

> RESPONSE:  KMA objects to this Request to the extent that it calls for the production of information regarding Kia dealers other than Plaintiff and Luther.

REQUEST NO. 9:  Produce all documents in Your possession, custody or control related to all monies spent on advertising by Local Kia Dealers, including how much each such dealer actually spent on advertising and how much each such dealer actually received from KMA for advertising in the form of RMF Program funds or similar advertising programs for the period from January 1, 2000 to the present. [14]

---

[11] As amended in the letter from Barnett's counsel to KMA's Counsel dated September 22, 2009, attached to Bagdon Aff. at ¶ 13.

[12]*See* Letter from KMA's counsel to Barnett's counsel, dated October 7, 2009 attached to Bagdon Aff. at ¶ 18**.**  *See also* Letter from KMA's counsel to Barnett's counsel, dated November 10, 2009, attached to Bagdon Aff. at ¶ 17.

[13] As amended in the letter from Barnett's counsel to KMA's Counsel dated September 22, 2009, attached to Bagdon Aff. at ¶ 13.

[14] As amended in the letter from Barnett's counsel to KMA's Counsel dated September 22, 2009, attached to Bagdon Aff. at ¶ 13.

RESPONSE:  KMA objects to this Request to the extent that it calls for the production of information regarding Kia dealers other than Plaintiff and Luther.

[KMA objects on relevancy grounds to producing any documents prior to September 2003.[15]]

REQUEST NO. 10:  Produce all documents in Your possession, custody or control reflecting internal communications between KMA representatives and employees regarding the RMF Program in the Central Region.

RESPONSE:  KMA objects to this Request to the extent that it calls for the production of information regarding Kia dealers other than Plaintiff and Luther.

REQUEST NO. 11:  Produce documents in Your custody, possession or control related to where and through what media any Local Kia Dealer that received RMF Program funds advertised, both when these dealerships were receiving RMF Program funds and when they were not.

RESPONSE:  KMA objects to this Request to the extent that it calls for the production of information regarding Kia dealers other than Plaintiff and Luther.

REQUEST NO. 12:  Produce all documents in Your possession, custody or control related to communications between and among KMA representatives in regard to advertising and promotional funds, either through the RMF program or otherwise.

RESPONSE:  [KMA will produce all non-privileged documents responsive to this Request regarding Barnett and Luther.]

REQUEST NO. 13:  Produce all documents in Your possession, custody or control identifying or related to the retail sales prices of Kia vehicles offered to customers from Local Kia Dealers that received RMF Program funds, as compared with the retail sales prices offered by Local Kia Dealers that did not receive RMF Program funds for the time period from September 20, 2003 to the present.

---

[15] *See* Letter from KMA's counsel to Barnett's counsel, dated August 17, 2009, attached to Bagdon Aff. at ¶ 16.  *See also* Letter from KMA's counsel to Barnett's counsel, dated November 10, 2009, attached to Bagdon Aff. at ¶ 17.

RESPONSE:  KMA objects to this Request to the extent that it calls for the production of information regarding Kia dealers other than Plaintiff and Luther.

REQUEST NO. 14:  Produce all documents in Your possession, custody or control that demonstrate that RMF Program payments were made to Kia dealers in the Central Region on a proportionally equal basis.

RESPONSE:  KMA objects to this Request to the extent that it calls for the production of information regarding Kia dealers other than Plaintiff and Luther.

REQUEST NO. 15:  Produce all documents in Your possession, custody or control related to communications between You and Barnett or any other Kia dealers in KMA's Central Region regarding the RMF Program, including, but not limited to, the availability of RMF Program funds, the qualifications for participation in the RMF Program, and the terms under which RMF Program Payments were made available to participating dealers under the RMF Program.

RESPONSE:  KMA objects to this Request to the extent that it calls for the production of information regarding Kia dealers other than Plaintiff and Luther.

REQUEST NO. 18:  Produce all documents in your possession, custody or control that analyze any differences in the retail sales prices of new vehicles and/or gross profit margins between Local Kia Dealers that received RMF Program funds and the Local Kia Dealers who did not receive RMF Program funds from January 1, 2000 through the present.

RESPONSE:  KMA objects to this request to the extent it calls for the production of documents regarding Kia dealers other than Plaintiff and Luther.

[KMA also refuses to produce any documents prior to September 2003 on relevance grounds.]

REQUEST NO. 19:  Produce all documents in your possession, custody or control reflecting monthly sales in dollars of new unit sales of Kia vehicles for each Local Kia Dealer from January 1, 2000 through the present.

RESPONSE:  KMA objects to this request to the extent it calls for the production of documents regarding Kia dealers other than Plaintiff and Luther.

[KMA also refuses to produce any documents prior to September 2003 on relevance grounds.]

REQUEST NO. 20:  Produce all documents in your possession, custody or control reflecting the monthly gross profit in dollars from new unit sales of Kia vehicles for each of the Local Kia Dealers from January 1, 2000 through the present.

RESPONSE:  KMA objects to this request to the extent it calls for the production of documents regarding Kia dealers other than Plaintiff and Luther.

[KMA also refuses to produce any documents prior to September 2003 on relevance grounds.]

REQUEST NO. 21:  Produce all documents in your possession, custody or control reflecting Luther's new unit sales of Kia vehicles by month from January 1, 2000 through the present and show the year, make, model, cost color, date sold and zip code of each new unit sold.

RESPONSE:  [KMA objects to producing documents prior to September 2003 on relevance grounds.]

REQUEST NO. 22:  Produce all of Luther's financial statements submitted to you for January 1, 2000 through the present.

RESPONSE:  [KMA objects to producing documents prior to September 2003 on relevance grounds.]

REQUEST NO. 23:  For each Local Kia Dealer, produce documents sufficient to identify by Dealer, the zip code of all purchasers of new Kia vehicles sold during the Relevant Period.

RESPONSE:  KMA objects to this request to the extent it calls for the production of documents regarding Kia dealers other than Plaintiff and Luther.

[KMA objects to producing documents prior to September 2003 on relevance grounds.]

## 30(b)(6) Notice[16]

<u>Topic a.</u>    Communications between You and any Kia Dealer in the Central Region between November 1998 and the present regarding the opportunity to participate in the RMF Program, including, but not limited to, the method by which this opportunity was conveyed to Central Region Kia Dealers, the availability of the RMF Program, and the qualifications for participation in the RMF Program.

> <u>RESPONSE:</u>  KMA objects to this Request to the extent that it calls for the production of information regarding Kia dealers other than Plaintiff and Luther.

<u>Topic b.</u>    The identity of each Local Kia Dealer that was offered the opportunity to participate in the RMF Program from November 1998 through the present.

> <u>RESPONSE:</u>  KMA objects to the Topic to the extent it calls for the production of information regarding Kia dealers other than Plaintiff and Luther.

<u>Topic c.</u>    The identity of each Local Kia Dealer that received advertising incentive payments or other consideration as a result of participation in the RMF Program, the date(s) on which each such dealer was offered RMF Program payments; the manner in which the offer(s) was communicated to the Local Kia Dealer, *i.e.,* by letter, fax, verbally, etc.; the maximum dollar amount made available to the Dealer as an incentive payment; the time period covered by each such incentive payment offer, *i.e.,* the month, the quarter, etc.; the conditions that the dealer was required to fulfill to receive the incentive payment; the co-op percentage reimbursement offered, *i.e.,* 50% or 100% reimbursement; the amount of each such incentive payment KMA ultimately paid each such Local Kia Dealer; and the date(s) on which incentive payments were made to each such dealer.

> <u>RESPONSE:</u>  KMA objects to this Topic to the extent it calls for the production of information regarding KIA dealers other than Plaintiff and Luther.

---

[16]  *See* Plaintiff's Notice of Taking Videotaped Deposition of Rule 30(b)(6) Designee, attached to "Bagdon Aff." at ¶ 21.  *See* Defendant KMA's Responses and Objections to Plaintiff's Notice of Taking Videotaped Deposition of Rule 30(b)(6) Designee, attached to Bagdon Aff. at ¶ 20.

Topic d [sic]:     KMA's procedures for determining which Kia Dealers in the Central Region would be offered the opportunity to participate in the RMF Program and how the decision as to the timing and amount of each such offer was made, including identification of each individual at KMA who was involved in the decision as to which Kia Dealers in the Central Region would be offered the opportunity to participate in the RMF Program, and the person(s) at KMA who made the final decision regarding the selection of which Kia Dealers would be given the opportunity to receive these incentive payments.

> RESPONSE:  KMA objects to this Topic to the extent it calls for the production of information regarding KIA dealers other than Plaintiff and Luther.

Topic e:     Advertising or promotional support offered or provided to Kia dealers in the Central Region, other than via the RMF Program, from November 1998 to the present, including the procedures for determining when and to whom advertising dollars and other marketing support available through these other programs would be made available, how the amount of each payment was determined, who made this decision, and how the availability of the programs was communicated to Kia dealers in the Central Region.

> RESPONSE: KMA objects to this Topic to the extent it calls for the production of information regarding KIA dealers other than Plaintiff and Luther.

Topic f:     The documentation required and received by KMA to support participating dealers' requests for an award of RMF Program funds.

> RESPONSE:  KMA objects to this Topic to the extent it calls for the production of information regarding KIA dealers other than Plaintiff and Luther.

Topic g:     The media advertising purchased by participating Local Kia Dealers with RMF Program funds and the media coverage area for such advertising.

[KMA agreed to provide documents responsive to this Topic, but only for September 2003 through the present.]

Topic h:     For the time period from the date the RMF Program was first implemented, *i.e.,* made available to any Central Region Kia dealer, through the present, the identity of each Central Region Kia Dealer that participated in the RMF Program, and whether each such participating dealer met, exceeded, or failed to meet the sales performance objectives set for it by KMA in each such month,

including the dollar amount of gross sales for each such dealer in each month, and, the corresponding sales target established by Kia. For each month in which a participating Central Region Kia Dealer met is performance objective, whether the dealer received any incentive payment, credit or other form of compensation for meeting or exceeding the sales target, the dollar amount of such bonus, credit or other compensation, and how the amount of any such incentive payment was determined.[17]

> RESPONSE:   KMA objects to this Topic to the extent it calls for the production of information regarding KIA dealers other than Plaintiff and Luther.
>
> KMA further objects to this Topic to the extent it calls for speculation as to the effect of the RMF Program on a participating dealer's sales.

Topic X [sic]:        Barnett's sales in each month for the period from November 1, 1998 to the present; whether Barnett received RMF Program funds in each such month; and whether Barnett met, exceeded, or failed to meet the sales performance objectives set by KMA in each such month.   If Barnett met its performance objective in a given month, the amount of dollar volume bonuses it received as a result.

> RESPONSE:   KMA objects to this Topic on the grounds that the time period November 1998 through the present is overly broad and unduly burdensome.[18]

Topic i:        The method by which KMA ensured that RMF Program funds were made available to all Local Kia Dealers on a proportionally equal basis.

---

[17] As amended in the letter from Barnett's counsel to KMA's Counsel dated September 22, 2009, attached to Bagdon Aff. at ¶ 13.  In response to Barnett's rewording of this Topic, KMA agreed to produce a witness to testify regarding Barnett's and Luther's sales objectives and sales from September 20, 2003 through March 21, 2008.  *See* Letter from KMA's counsel to Barnett's counsel, dated August 17, 2009, attached to Bagdon Aff. at ¶ 16.  However, KMA objected to producing a witness to testify on the incentive payments or other compensation received by dealers other than Barnett as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. *See id.*

[18] KMA subsequently agreed to produce a witness on this topic from the time period September 20, 2003 through March 21, 2008.  *See* letter from KMA's counsel to Barnett's counsel, dated November 10, 2009, attached to Bagdon Aff. at ¶ 17.

> RESPONSE: KMA objects to this Topic to the extent it calls for the production of information regarding KIA dealers other than Plaintiff and Luther.

Topic j:   Any situation in which RMF Program funds were provided to a Local Kia Dealer in order for that dealer to meet a competitor's pricing, including the factors upon which KMA relied in making the determination that a grant of RMF Program funds was necessary for the dealer to meet lower prices offered by a competitor.

> RESPONSE: KMA objects to this Topic to the extent it calls for the production of information regarding KIA dealers other than Plaintiff and Luther.

Topic k:   The purposes for which funds maintained in the RMF account[19] were used by KMA at any time other than in connection with the RMF Program, including the identification of any Local Kia Dealers receiving such funds, the dates on which such funds were provided, and the basis for providing RMF Program funds to each such dealer.

> RESPONSE: KMA objects to this Topic to the extent it calls for the production of information regarding KIA dealers other than Plaintiff and Luther.

## **ARGUMENT**

I.   **Legal Standard.**

   *a.* **General Discovery Principles Under Federal Law.**

Rule 26 of the Federal Rules of Civil Procedure provides, in pertinent part, for the

following:

> Discovery Scope and Limits.  Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

---

[19] KMA defined "RMF account" to mean the Regional Marketing Funds for Kia's Central Region.  *See* letter from Barnett's counsel to KMA's Counsel dated September 22, 2009, attached to Bagdon Aff. at ¶ 13.

> (1) In General.  Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. . . .

Fed. R. Civ. P. Rule 26(b)(1).  Federal Rule of Civil Procedure 26 is to be construed broadly and encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Milk Products Antitrust Litigation*, 84 F. Supp. 2d 1016, 1027 (D. Minn. 1997) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  If the responding party fails to comply with the aforementioned discovery obligations, the other party may move for a motion to compel discovery.  *See* Fed. R. Civ. P. Rule 37.

### b.  Standard for Motion to Compel Discovery.

A court may properly compel the production of a party's answers and responses to discovery requests when:

> a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested . . . .

Fed. R. Civ. P. Rule 37(a)(2)(B).  Further, a requesting party may move "to determine the sufficiency of an answer or objection" to a Request for Admission.  *Id.* at 36(a)(b).  Upon such a motion, "[u]nless the court find an objection justified, it must order that an answer be served."  *Id.*  The court may also order the matter admitted.  *Id.*

Pursuant to Rule 37(a)(1), movant certifies that it has in good faith conferred with the attorneys form KMA in an effort to obtain the requested discovery without court action.  This motion to compel discovery is proper in this matter because the Parties have

been unable to resolve the instant discovery dispute, despite their numerous good-faith attempts, and this Motion complies with Rule 37(a)(2)(B).

Specifically, the parties exchanged six letters (true and correct copies of which are attached to Bagdon Aff. at ¶¶ 13 - 17) in an attempt to resolve their discovery disputes. The parties also exchanged email communications and participated in phone conferences over the past months regarding these disputes. Although the parties did resolve some minor discovery issues, the overarching issues (*i.e.,* whether Barnett is entitled to discovery of information regarding Local Kia Dealers other than Luther, and the appropriate time period from which the parties may seek discovery) remain unresolved.

## II.   <u>The Information Sought by Barnett is Discoverable in this Matter.</u>

KMA repeatedly objects to Barnett's Discovery Requests on the basis that the Requests involve or relate to Local Kia Dealers[20] other than Barnett and Luther, and that the time frame for the Requests is overly broad. Each of these objections is without merit.

### a.  **KMA's Objection to Providing Discovery Regarding Other Dealers Is Without Merit.**

The issue in the underlying litigation is whether KMA violated Section 2(d) by offering RMF Program Funds on a proportionally equal basis to Barnett and its

---

[20] Barnett initially sought discovery regarding Central Region Kia dealers. Through the parties' attempts to resolve their discovery disputes, Barnett limited its requests regarding other dealers to the Kia dealers serving the Twin Cities Metropolitan Area. With the exception of Requests for Admissions 5, 6, and 7, which relate to the specific Central Region Kia dealers to whom KMA sent RMF Fund notification letters in December 2006, Barnett now only seeks information regarding the seven Twin Cities Metropolitan Area Kia dealers.

competing dealers.   KMA's "other dealers" objection is no more than an attempt to reframe the issues raised by Barnett's Complaint and narrow the scope of the dispute to the disparities in advertising incentives provided to just two of the seven Local Kia Dealers competing in the Twin Cities Metro market, *i.e.,* Barnett and Luther.

However, the fact that, at this point in the litigation (*i.e.*, before completion of discovery), Barnett only has evidence that Luther, among the Local Kia Dealers, received advertising incentives in December 2006, does not limit Barnett's claims to the issue of advertising incentives that KMA provided to Luther.

In fact, whether KMA provided RMF Program Funds or other advertising incentives to Local Kia Dealers competing in the Twin Cities Metropolitan Area, and to which dealers KMA provided such advertising incentives, is directly relevant to Barnett's claim that it suffered harm as a result of KMA's failure to comply with the requirements of Section 2(d) of the Robinson-Patman Act, Barnett's damages, and whether KMA has a defense to Barnett's claim.

### i. The "Local Kia Dealers" Compete with Barnett.

The close geographic proximity of the Local Kia Dealers, defined to include Barnett, Luther, Metro Kia/Kia of Bloomington, Morrie's Kia, Kia of Brooklyn Park, Monticello Kia and Jeff Belzer Kia) necessarily means that they compete with Barnett for potential Kia customers located in and around the Twin Cities Metropolitan Area.[21]

---

[21]   For purposes of this motion, the "Twin Cities Metropolitan Area" means the Minneapolis-Saint Paul-Bloomington statistical area, as defined by the U.S. Census Bureau, and consisting of the counties of Anoka, Carver, Chisago, Dakota, Hennepin, Isanti, Ramsey, Scott, Sherburne, Washington and Wright.

KMA attempts to rely upon this Court's decision to dismiss Barnett's claims involving Duluth Kia to argue that Barnett is not entitled to discovery information regarding the Local Kia Dealers.  However, these arguments are inapplicable to the relationship between Barnett and the Local Kia Dealers.  Barnett and the Local Kia Dealers are all located within the seven counties comprising the Twin Cities Metropolitan Area, while Duluth is located outside of this metropolitan area.  Duluth Kia is 140 miles from Barnett, while the six Local Kia Dealers are within a 45-mile radius of Barnett.  In fact, four of the Local Kia Dealers are less than 30 miles from Barnett.[22]  In short, Barnett and the Local Kia Dealers serve the same market and compete for customers in that market.

In fact, Barnett has made sales to customers who live closer to each of these Kia dealers than to Barnett, and into all of these Local Kia Dealers' Areas of Primary Responsibility ("APR").  Further, it would be highly unlikely if each of the other Local Kia Dealers does not make sales to customers who live in Barnett's APR.  Barnett and all of the Local Kia Dealers use the same media channels, including television, newspaper and radio, to reach the same potential customers.  Advertising for one dealership reaches customers in the other dealership's APR.  Therefore, information about advertising support provided to any Local Kia Dealer is clearly relevant to Barnett's claims because these Local Kia Dealers compete with Barnett for the same customers.

---

[22] Each Local Kia Dealer is located the following distance from Barnett: Luther, 15.6 miles; Morrie's Kia, 27.6 miles; Monticello Kia, 44.6 miles; Kia of Brooklyn Park, 22.4 miles; Belzer Kia, 33.5 miles; and Metro Kia/Kia of Bloomington, 24.9 miles.

Whether KMA offered and provided RMF Program Funds to Local Kia Dealers is at the heart of Barnett's claim that KMA did not comply with its obligation under Section 2(d) to offer advertising incentives on proportionally equal terms to competing dealers. Thus, KMA's objection to providing information regarding Local Kia Dealers other than Luther is without merit because Barnett competes with these other Kia dealers.

### ii. *The Manner in Which KMA Makes Advertising Funds Available to all Dealers Competing with Barnett is Relevant to this Action.*

In order to meet the threshold requirement of discoverability, the information sought must be "relevant to the subject matter involved in the pending action." *Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*, 187, F.R.D. 578, 589 (D. Minn. 1999) (quoting *Shelton v. American Motors*, 805 F.2d 1323, 1326 (8th Cir. 1986)). However, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. Rule 26(b)(1).

The gist of the claims set forth in Barnett's Complaint is that KMA engaged in the practice of making discretionary advertising funds available to certain selected dealers in its Central Region pursuant to a program known as the "RMF Program," but did not offer these funds to Barnett. [*See* First Amended Complaint, at ¶ 12.] Section 2(d) of the Robinson-Patman Act prohibits manufacturers from providing payments to dealers to be used in connection with the resale of goods, including payments to be used for advertising, unless the payments are made available to all dealers competing in the distribution of such products on proportionally equal terms. *See, e.g., FTC v. Fred*

*Meyer, Inc.*, 390 U.S. 341, 343 (1967); *see also Hygrade Milk & Cream Co., Inc. v. Tropicana Prod., Inc.*, 1996 WL 257581, at \*12 n. 11 (S.D.N.Y. May 16, 1996).

Whether dealers competing with Barnett received the RMF Program Funds, and the manner in which KMA offered advertising funds to these dealers, is directly relevant to Barnett's claims. All of the discovery requests that seek information regarding the Local Kia Dealers are reasonably calculated to obtain this information. In fact, it would be impossible for Barnett to discover whether KMA made RMF Program Funds available to competing dealers on a proportionally equal basis without having access to information regarding which competing dealers received the funds and how the funds were made available to these competing dealers.

This Court has not, as KMA argues, specifically focused this case on Luther and Barnett. While this Court did reject Barnett's claim in regard to Duluth Kia on the ground that Barnett did not make sufficient allegations that it competes with Duluth Kia, this Court did not specifically limit the dispute to the issue of whether RMF Funds were made available to Luther. This Court did not hold that Luther is Barnett's <u>only</u> same brand competitor. Thus, Barnett has the right to obtain discovery to determine whether KMA offered RMF Program Funds to other Local Kia Dealers with which Barnett doe compete.

Further, it cannot be concluded from the fact that Barnett has only discovered that KMA provided RMF Program Funds to Luther that KMA did not offer RMF Program Funds to other Local Kia Dealers. Conversely, if KMA did selectively favor Luther over all other Local Kia Dealers, this fact also is relevant to establish that KMA did not

provide advertising incentives to competing dealers, including Barnett, on a proportionally equal basis.  In short, it cannot be determined whether KMA provided advertising incentive funds to competing dealers on a proportionally equal basis by comparing the treatment of only two same brand dealers when seven same brand dealers compete in a market.

### iii.   The Measure of Barnett's Harm is Determined by the Remedies Available to it under Section 2(d).

Because the measure of Barnett's harm is determined by the remedies available to it under Section 2(d), Barnett is necessarily permitted to inquire into whether KMA comported with the requirements of Section 2(d), including, without limitation, how KMA determined which Local Kia Dealers would receive RMF Program funds; which Local Kia Dealers actually were offered the opportunity to participate in the RMF Program; how KMA notified Local Kia Dealers about the Program; and how KMA ensured that funds were available on a proportionally equal basis to all competing dealers.  Evidence regarding which competing dealers received RMF Program Funds (or at least notice regarding the availability of the funds) is directly relevant to Barnett's claims that it was damaged by KMA's violations of Section 2(d), and the advantages that any Local Kia Dealer experienced as a result of the RMF Program Funds correlate to the damages that Barnett has suffered. *Bigelow, et al. v. RKO Pictures, Inc., et al.*, 327 U.S. 251, 264 (1946) (finding that a comparison of the plaintiff's actual profits with the contemporaneous profits of a competing business not subject to discrimination was a proper measure of damages in a Robinson-Patman Act case).

### b.   KMA's Objection to the Relevant Period Is Without Merit.

KMA's objection to producing documents prior to September 2003 is equally without merit.

In its discovery requests, Barnett defined the term "Relevant Period" to be November 1998 (*i.e.,* when the parties' relationship began) through the present.   KMA objects to this definition of the Relevant Period as overly broad and unduly burdensome. In some cases, KMA refuses to provide any information or documents prior to September 2003, arguing that it is not required to produce documents from outside the statute of limitations period.   In other cases, KMA refuses to provide information or documents prior to January 2003, or after March 2008.   KMA should provide information and documents in response to all Requests from November 1998 to the present because these documents are relevant to Barnett's claims, and because KMA has made no showing that it would be unduly burdensome to produce documents from these time periods.

KMA's objection that requiring it to provide any information from outside the statute of limitation creates an undue burden is without merit.   Statutes of limitation serve as a bar to prevent a plaintiff from initiating a lawsuit seeking to recover damages after a defined period of time following the events that gave rise to the plaintiff's claims.   They do not, as KMA suggests, define the outer time limits for discovery of information that is otherwise relevant to the issues in the case.   Indeed, it is improper to deny discovery of matters that relate to events that occurred before an applicable statute of limitation period when the information sought is otherwise relevant to issues in the case.   *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978); *Crosetto v. Heffernan*, No. 88 C 433 C,

1990 WL 304213, at *3 (N.D. Ill. Sept. 26, 1990).  The specific information requested by Barnett that falls outside the statute of limitation period is relevant to the issues raised by Barnett in its Amended Complaint.

Specifically, information from the entire Relevant Period is relevant to either prove Barnett's claim that KMA did not make RMF Program funds available to all competing dealers on a proportionally equal basis, or to establish KMA's affirmative defenses, including the defense that Barnett had prior knowledge regarding the RMF Program, on this point.  There is no other way that Barnett can obtain this information.  This information also is necessary, and has been requested by Barnett's damages expert, to accurately determine Barnett's damages.

KMA fails to explain in its objections why the request for information before January 1, 2003 is unduly burdensome.  Indeed, no great burden will be placed on KMA if it is required to comply with these Requests because the Requests narrowly focus on the RMF Program; any such information can be found in KMA's business records; and the Requests are limited to a narrow time period relevant to this action (*i.e.,* the time period in which Barnett has been a Kia dealer).

As indicated in the responses above, KMA repeatedly objects to the "Relevant Period" on the basis that the information sought is overly broad and unduly burdensome.  Yet, these types of conclusory objections, without more, do not constitute a valid objection.  *Mead Corp. v. Riverwood Natural Resources Corp.*, 145 F.R.D. 512, 515 (D. Minn. 1992); *Orbovich v. Macalester College*, 119 F.R.D. 411, 416 (D. Minn. 1988) (noting that discovery materials are often a costly and burdensome enterprise, yet

objections to discovery will not be sustained unless discovery is *unreasonably* burdensome) (emphasis added).  "The party opposing discovery shoulders the burden of showing that discovery request is overly broad and burdensome, and the written objection must allege facts which demonstrate the extent and nature of the burden imposed by preparation of a proper response."  *Mead*, 145 F.R.D. at 516.  KMA failed to substantiate its objection with *any* evidence of the nature and extent of the burden.

Furthermore, contrary to KMA's blanket assertion that the Relevant Period is "overly broad and unduly burdensome," Barnett limited its Requests to a discrete time period and other specificities to narrow the scope of Request.

In light of the relevancy of such information, and KMA's failure to specifically allege the manner by which it will be overly burdened or oppressed if forced to comply with the Requests, Barnett asks this Court to declare that the Relevant Period is neither overly broad nor unduly burdensome and issue an order compelling KMA to fully respond to the Requests.

### c. Individual Objections

The following is a concise recitation as to why each following objection is improper (as required by Local Rule 37.2 for the United States District Court for the District of Minnesota):

### **Interrogatories**

Interrogatory No. 1:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Information regarding communications between KMA and any Local Kia Dealers regarding the availability and conditions and terms of RMF

Program is directly relevant to Barnett's claims.  KMA has also indicated that it cannot answer the Interrogatory because it has not yet completed its document production.  Eight months is sufficient time for KMA to have complied with Barnett's document requests. Barnett Kia respectfully requests that this Court compel KMA to fully answer Interrogatory No. 1 either by providing a narrative response or producing documents sufficient to respond to the request, and that the information be provided for all Local Kia Dealers.

Interrogatory No. 2:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Information regarding which Local Kia Dealers were offered incentive payments through the RMF Program is directly relevant to Barnett's claims.

Interrogatory No. 3:  The documents designated in KMA's response do not provide a full response to this Interrogatory in that they do not fully answer the questions posed, relate only to Luther Kia and Barnett Kia, and do not include certain RMF Fund award letters known to Barnett Kia to exist.  *See* response to Interrogatory No. 1 regarding KMA's failure to produce documents.

Interrogatory No. 5:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Given KMA's reservation of its objection, Barnett assumes that the answer "None" refers only to Barnett and Luther.

Interrogatory No. 6:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  KMA's procedures for determining which Kia dealers in the Central Region would be offered the opportunity to participate in the RMF

Program is directly relevant to Barnett Kia's claims.

Interrogatory No. 9:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Information regarding Local Kia Dealers' requests for RMF Program funds and KMA's administration of the RMF Program is directly relevant to Barnett's claims that the RMF Program was not administered in accordance with the requirements of Sec. 2(d).  *See* response to Interrogatory No. 1 regarding KMA's failure to produce documents.

Interrogatory No. 10:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Information regarding how Local Kia Dealers utilized RMF Program funds is directly relevant to Barnett's claims and damages.  *See* response to Interrogatory No. 1 regarding KMA's failure to produce documents.

Interrogatory No. 11:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Whether Local Kia Dealers met or exceeded sales performance objectives, in connection with whether those dealers received RMF Program funds, is directly relevant to Barnett's damages.  *See Bigelow*, 327 U.S. at 264 (finding that comparison of performance results of disfavored plaintiff and a competing favored business is a proper measure of damages); s*ee also* response to Interrogatory No. 1 regarding KMA's failure to produce documents.

Interrogatory No. 12:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  The dollar volume bonuses, or other forms of consideration, available to Local Kia Dealers for meeting or exceeding sales targets set by KMA is relevant to the determination of Barnett's damages.  Barnett contends that had

it been offered the opportunity to participate in the RMF Program, it would have been able to meet the sales targets set for it by KMA, and would have been eligible to receive this compensation.  There is no other way that Barnett can obtain this information, and no great burden will be placed on KMA if it is required to answer this Interrogatory.

Interrogatory No. 13:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Further, KMA has not fully and completely answered the Interrogatory as required by Rule 33(b)(3).  KMA has not explained the method it employed for calculating or otherwise determining the proportionality of these distributions.  KMA's Answer to Interrogatory No. 7 does not fully and completely respond to this specific question posed by Interrogatory No. 13.

Interrogatory No. 14:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  KMA's reference to its responses to Interrogatories Nos. 2 and 7 is insufficient as a response to this Interrogatory, as KMA failed to fully or fairly respond to those Interrogatories.

Interrogatory No. 15:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a). Further, KMA failed to fully or fairly respond to this Interrogatory as required by Rule 33(b)(3).  KMA has not provided any facts describing Kia dealers to whom such "meeting competition" funds were made available.  KMA also failed to identify which dealers it determined were "competing" with Kia Dealers that received RMF Program funds.

Interrogatory No. 17:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  KMA's objection to the Relevant Time Period as

overly broad and unduly burdensome is without merit for the reasons outlined in Section II(b).

Interrogatory No. 21:   KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  The number of new Kia vehicle sales made by Local Kia Dealers that received RMF Program funds is directly relevant to Barnett's damages. *See* response to Interrogatory No. 1 regarding KMA's failure to produce documents.

Interrogatory No. 22:   KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  This Interrogatory is not duplicative of Interrogatory No. 22 because this Interrogatory asks KMA to identify the zip codes of all purchasers of new Kia vehicles sold by Local Kia Dealers during the Relevant Period.   Interrogatory No. 21 does not seek this information.

## Requests for Admission

Request No. 5:   KMA's objection on the basis that this Request calls for information about other dealers is without merit because KMA's procedures for providing notification regarding the availability of RMF Program funds to Kia dealers in the Central Region is directly relevant to Barnett's claims.  There is no way for Barnett to determine whether RMF Program funds were made available to competing dealers on a proportionally equal basis without obtaining information regarding whether KMA notified other dealers of the availability of these funds.

Request No. 6:   *See* discussion in response to Request for Admission No. 5. Additionally, whether these other dealers did, in fact, receive discretionary advertising payments is directly relevant to Barnett's damages.

Request No. 7:  *See* discussion in response to Request for Admission No. 5.

Request No. 8:   *See* discussion in response to Request for Admission No. 5. Additionally, whether these other dealers did, in fact, receive discretionary advertising payments is directly relevant to Barnett's damages.

Request No. 11:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Further, KMA has failed to state with specificity in what regard the request is vague and ambiguous, as required by Fed. R. Civ. P. 33(b)(4), or how this Request calls for speculation.  Finally, the information sought by this Request is directly relevant to Barnett's damages.

Request No. 20:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  The information sought by this Request is also directly relevant to Barnett's damages.  Further, KMA has failed to state with specificity in what regard the request is vague and ambiguous, as required by Fed. R. Civ. P. 33(b)(4), after Barnett defined the term "manufacturer" to mean "KMA," "rebate" to mean "a return of a part of the original payment for a KIA unit purchased from KMA," and "more competitive price" to mean a price lower than would have been offered absent the manufacturer rebate.  Finally KMA failed to specify how this Request calls for speculation.

Request No. 27:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a) above.  The information sought by this Request is also directly relevant to Barnett's damages.  KMA should reply to this Request in regard to all Local Kia Dealers.

**Requests for Documents**

Request No. 3:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Documents regarding the availability of RMF Program Funds to Local Kia Kia dealers will provide information directly relevant to Barnett's claims.

Request No. 5:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Communications between or among Kia representatives regarding the determination of how RMF Program funds and funds from other promotional program would be distributed will provide information directly relevant to Barnett's claims.

Request No. 6:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  KMA's objection to producing any documents from before September 2003 is without merit for the reasons outlined in Section II(b).  Documents regarding monthly sales targets for Kia dealers will provide relevant information to establish Barnett's damages.

Request No. 7:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  KMA's objection to producing any documents from before September 2003 is without merit for the reasons outlined in Section II(b).  Documents regarding monthly new unit sales achieved by Local Kia Dealers that received discretionary coop advertising funds through the RMF Program or other promotional programs will provide relevant information to establish Barnett's damages.

Request No. 8:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  KMA's objection to producing any documents from before

September 2003 is without merit for the reasons outlined in Section II(b). Documents related to the receipt of RMF Program funds or other promotional allowances provided to Local Kia Dealers are directly relevant to, or likely to lead to admissible evidence in support of, Barnett's claims.

Request No. 9: KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a). KMA's objection to producing any documents from before September 2003 is without merit for the reasons outlined in Section II(b). Documents related to money spent on advertising by Local Kia Dealers, as compared to how much each received in the form of RMF Program funds or similar advertising programs, are directly relevant to Barnett's claims and damages.

Request No. 10: KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a). Internal communications between KMA representatives regarding the RMF Program in the Central Region are directly relevant to, or likely to lead to admissible evidence in support of, Barnett's claims.

Request No. 11: KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a). The media in which Local Kia Dealers that received RMF funds advertised is directly relevant to Barnett's damages.

Request No. 12: KMA only agreed to produce documents that are responsive to this Request in regard to Barnett and Luther. However, the Request seeks documents related to "communications between and among KMA representatives in regard to advertising and promotional funds," whether those communications involve Barnett or Luther or another Kia dealers. KMA's limited response is insufficient for the reasons

outlined in Section II(a).

Request No. 13:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Further, the retail sales prices of Kia vehicles offered to customers from Local Kia Dealers (*i.e.,* those dealers that compete with Barnett) that received RMF Program funds is directly relevant to Barnett's claim for damages and will tend to prove whether additional advertising made possible by the receipt of RMF Program funds increased revenue.

Request No. 14:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Documents that demonstrate that RMF Program payments were made to Kia dealers in the Central Region on a proportionally equal basis are directly relevant to KMA's defense to Barnett's claim under Section 2(d).

Request No. 15:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  KMA's communications with Barnett and other Kia dealers in the Central Region in regard to the availability of the RMF Program funds is directly relevant to Barnett's claim that the RMF Program funds were not offered to all competing Kia dealers on a proportionally equal basis.

Request No. 18:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  KMA's objection to producing any documents from before September 2003 is without merit for the reasons outlined in Section II(b).  Further, information regarding the differences in retail sales prices of new vehicles and/or gross profit margins between Local Kia Dealers that received RMF Program funds and those who did not is directly relevant to Barnett's damages.

Request No. 19:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  KMA's objection to producing any documents from before September 2003 is without merit for the reasons outlined in Section II(b).  Information regarding monthly new unit sales of Kia vehicles for each Local Kia Dealer is directly relevant to Barnett's claim for damages.

Request No. 20:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  KMA's objection to producing any documents from before September 2003 is without merit for the reasons outlined in Section II(b).  Information regarding gross profits from new unit sales of Kia vehicles by Local Kia Dealers is directly relevant to Barnett's claim for damages.

Request No. 21:  KMA's objection to producing any documents from before September 2003 is without merit for the reasons outlined in Section II(b).

Request No. 22:  KMA's objection to producing any documents from before September 2003 is without merit for the reasons outlined in Section II(b).

Request No. 23:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  KMA's objection to producing any documents from before September 2003 is without merit for the reasons outlined in Section II(b).  Documents sufficient to identify the zip code of all purchasers of new Kia vehicles who purchased their vehicle from a Local Kia Dealer will provide admissible information regarding Barnett's claims and damages.

## 30(b)(6) Topics

Topic a:   KMA's "other dealers" objection is without merit for the reasons

outlined in Section II(a). Communications between KMA and Central Region Kia Dealers regarding the opportunity to participate in the RMF Program are directly relevant to Barnett's claim that RMF Program funds were not made available to competing dealers on a proportionally equal basis.

Topic b: KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a). Information regarding the identity of Local Kia Dealers that were offered the opportunity to participate in the RMF Program is directly relevant to Barnett's claims and damages.

Topic c: KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a). Information regarding Local Kia Dealers that were offered and received RMF Program funds is directly relevant to Barnett's claims and damages.

Topic d [sic]: KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a). Information regarding KMA's procedures to determine which Central Region Kia dealers would be offered the opportunity to participate in the RMF Program is relevant to, or likely to lead to admissible evidence about, Barnett's claims.

Topic e: KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a). Information regarding advertising or other promotional support that KMA has offered to Central Region Kia dealers, and information regarding how this information was communicated to Kia dealers, is likely to lead to admissible evidence regarding Barnett's claims and/or KMA's defense that Barnett knew about the availability of funds through the RMF Program.

Topic f: KMA's "other dealers" objection is without merit for the reasons

outlined in Section II(a).  Information regarding participating dealers' requests for an award of RMF Program funds is relevant to KMA's defense that Barnett knew about the availability of RMF Program funds.

Topic g:  KMA's objection to producing any documents from before September 2003 is without merit for the reasons outlined in Section II(b).  Information regarding the media advertising purchased by Local Kia Dealers with RMF Program Funds during the time that Barnett has been a Kia dealer is directly relevant to Barnett's damages.

Topic h:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Information regarding whether Local Kia Dealers that received RMF Program funds met sales objectives is directly relevant to Barnett's damages.  This Topic does not call for speculation; rather, it asks for factual testimony regarding: (1) which Kia dealers participated in the RMF Program; and (2) the number of sales that those dealers made when they received RMF Program funds and the number of sales made when they did not.

Topic X [sic]:  KMA's objection to the Relevant Time Period as overly broad and unduly burdensome is without merit for the reasons outlined in Section II(b).  Additionally, KMA failed to specifically state how the Relevant Time Period is overly broad and unduly burdensome.

Topic i:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Information regarding KMA's method for ensuring that RMF Program funds were made available to all Local Kia Dealers on a proportionally equal basis is directly relevant to Barnett's claim that KMA failed to do so.

Topic j:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Information regarding the provision of RMF Program funds to a Local Kia Dealer to meet a competitor's price is directly relevant to KMA's "meeting competition" defense.

Topic k:  KMA's "other dealers" objection is without merit for the reasons outlined in Section II(a).  Information regarding the funds in the RMF account is directly relevant to Barnett's claims and KMA's defense that Barnett knew about the RMF Program.

## CONCLUSION

In light of the foregoing, Barnett respectfully requests this Court issue an Order compelling KMA to supplement its Responses to Barnett's Interrogatories, Requests for Admission, Requests for Production of Documents, and Notice of 30(b)(6) Deposition, and order that KMA immediately produce all documents responsive to Barnett's Requests.

Dated this 4th day of December, 2009.          **DADY & GARNER, P.A.**

                                By:  /s/ Barbara A. Bagdon
                                     J. Michael Dady (MN #2062X)
                                     Barbara A. Bagdon (MN #0386452)
                                     Mary K. DesCombaz (MN #0389355)
                                        5100 IDS Center
                                        80 South Eighth Street
                                        Minneapolis, MN 55402
                                        PH:    612-359-9000
                                        FX:    612-359-3507

                                     **ATTORNEYS FOR PLAINTIFF**